IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RFCYBER CORP., § | |
| § | Case No. |
| Plaintiff, § | |
| § | **JURY TRIAL DEMANDED** |
| v. § | |
| § | |
| SHELL INFORMATION TECHNOLOGY § | |
| INTERNATIONAL B.V. and EQUILON § | |
| ENTERPRISES LLC, D/B/A SHELL OIL § | |
| PRODUCTS US, § | |
| § | |
| Defendants. § | |
| § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, RFCyber Corp. ("RFCyber" or "Plaintiff"), files this Complaint against Defendant Shell Information Technology International B.V. and Equilon Enterprises LLC, d/b/a Shell Oil Products US (collectively, "Shell" or "Defendants"), for patent infringement under 35 U.S.C. § 271 and alleges as follows:

**THE PARTIES**

1. RFCyber is a Texas corporation with a place of business at 7700 Windrose Avenue, Suite G300, Plano, Texas 75024. RFCyber is the exclusive licensee with the right to sue for U.S. Patent No. 8,448,855 (the "Patent-in-Suit" or "Asserted Patent").

2. Upon information and belief, Defendant Shell Information Technology International B.V. is a corporation organized and existing under the laws of The Netherlands, with a primary place of business at a company whose registered office is at Carel van Bylandtlaan 30, Den Haag, 2596 HR, The Netherlands, and may be served pursuant to the provisions of the Hague Convention. Upon information and belief, Shell Information Technology International B.V. does

business in Texas and in the Eastern District of Texas, directly or through intermediaries, including by operating and providing the Shell Application.

3. Upon information and belief, Defendant Equilon Enterprises LLC, d/b/a Shell Oil Products US is a corporation organized and existing under the laws of Delaware. Upon information and belief, Equilon Enterprises LLC, d/b/a Shell Oil Products US has numerous places of business in Shell locations throughout this District, including at least 4040 Preston Road, Plano, Texas 75093l; 1106 East Bethany Drive, Allen, Texas 75002; 5032 Preston Road, Frisco, Texas 75034; 638 East NE Loop 323, Tyler, Texas 75706; 12734 TX-364 Spur, Tyler, Texas 75709; 6351 Paluxy Drive, Tyler, Texas 75703; 12011 US-271, Tyler, Texas 75708; 1920 East Marshall Avenue, Longview, Texas 75601; 3913 West Marshall Avenue, Longview, Texas 75604; 1001 West Loop 281, Longview, Texas 75604; 3302 South Eastman Road, Longview, Texas 75602; 2507 West Pinecrest Drive, Marshall, Texas 75670; 5506 East End Boulevard South, Marshall, Texas 75672; 4603 West 7th Streer, Texarkana, Texas 75501; 102 Redwater Road, Wake Village, Texas 75501; and 1955 North Kings Highway, Nash, Texas 75569. Equilon Enterprises LLC, d/b/a Shell Oil Products US may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 and 1367.

5. This Court has specific and personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Defendants have sufficient minimum contacts with the

forum because Defendants have physical locations and transacts substantial business in the State of Texas and in this Judicial District. Further, Defendants have, directly or through subsidiaries or intermediaries, committed and continue to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because Defendants are subject to personal jurisdiction in this Judicial District, have committed acts of patent infringement in this Judicial District, and have a regular and established place of business in this Judicial District. Defendants, through their own acts, makes use, sell, and/or offer to sell infringing products within this Judicial District, regularly do and solicit business in this Judicial District, and have the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one.

7. Further, venue is proper in this Judicial District because Shell Information Technology International B.V. is a foreign corporation formed under the laws of the Netherlands with a principal place of business in The Netherlands.

8. The Shell Application is owned and operated by Defendant Shell Information Technology International B.V. and is distributed and used throughout the United States, including in the Eastern District of Texas.[1]

9. The Shell Application is further "provided in the fifty (50) U.S. states, Washington D.C., and Puerto Rico" by Equilon Enterprises LLC, d/b/a Shell Oil Products US ("Shell Oil

---

[1] https://www.shell.us/motorist/shell-app/terms-and-condition.html

Products US").[2] Shell Oil Products US "operates a network of gasoline stations in the United States," including, upon information and belief, in this District.[3]

10. Shell locations in gas stations and convenience stores throughout this District are places of business of Shell Oil Products US. In addition to holding those locations out to customers as Shell retail locations, and describing itself as "the world's largest mobility retailer selling $6 billion of convenience retail products, and 250 million cups of coffee annually," Shell Oil Products US actively operates those locations such as by, upon information and belief, supplying those locations with oil and convenience store products alone and in cooperation with other Shell subsidiaries.[4] Upon information and belief, in addition to operating retail franchise locations in this District, Shell Oil Products US owns gas and convenience locations in this District both directly and through ownership interests in other entities. Upon information and belief, Shell Oil Products US further collects ongoing fees, such as royalties and marketing fees, from Shell locations in this District, provides training and support to Shell locations in this District, and determines the geographical bounds of Shell locations in this District, alone or in concert with other Shell subsidiaries.[5] For example, upon information and belief, Shell Oil Products US provides "Shell Retail Brand Licensing Packages," including "tools and guidance across all areas of mobility retail – ranging from fuels (traditional fuels, as well as new fuels including e-mobility), to convenience retail, marketing campaigns and digital tools and channels," and provides "the

---

[2] https://www.shell.us/motorist/shell-app/terms-and-condition.html
[3] *See e.g.* https://www.epa.gov/enforcement/equilon-enterprises-llc-doing-business-shell-oil-products-us-motiva-enterprises-llc-and
[4] https://www.shell.com/business-customers/shell-brand-licensing/shell-retail-licensing/about-shell-retail.html
[5] *See e.g.,* https://www.shell.com/business-customers/shell-brand-licensing/shell-retail-licensing.html

support of a dedicated Brand License Manager and the wider Shell team."[6] As a further example, Shell locations "can use millions of dollars' worth of campaigns and promotions that Shell has developed and implemented worldwide, from TV commercials by award-winning Hollywood directors to on-site promotions with global brands, and millions of digital interactions on the web and social media every day."[7]

11. Equilon Enterprises LLC d/b/a Shell Oil Products US is further a licensed liquified gas dealer, and a diesel and gas supplier in Texas, and upon information and belief supplies gasoline and diesel to Shell locations in this District.

**Fuels License Details**

Taxpayer Name: EQUILON ENTERPRISES LLC
Address: PO BOX 4525, HOUSTON, TX 77210
Taxpayer ID: 15220745283

| Fuel Type | License Type | License Status | License Begin Date | License End Date |
|---|---|---|---|---|
| Liquified Gas | CNG/LNG Dealer | Active | 02/19/2014 | |
| Diesel | Supplier | Active | 01/01/2004 | |
| Gasoline | Supplier | Active | 01/01/2004 | |

---

[6] https://www.shell.com/business-customers/shell-brand-licensing/shell-retail-licensing/shell-retail-brand-licensing-offer.html
[7] https://www.shell.com/business-customers/shell-brand-licensing/shell-retail-licensing/shell-retail-brand-licensing-offer.html

5

## PATENT-IN-SUIT

12. On May 28, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,448,855 (the "'855 Patent") entitled "Method and Apparatus For Funding An Electronic Purse." A true and correct copy of the '855 Patent is attached as Exhibit A.

13. RFCyber is the exclusive licensee with the right to sue for the '855 Patent, and holds the exclusive right to take all actions necessary to enforce its rights to the Patent-in-Suit, including the filing of this patent infringement lawsuit. RFCyber also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit and to seek injunctive relief as appropriate under the law.

## INFRINGEMENT ALLEGATIONS

14. The technologies of the Patent-in-Suit were variously invented by Liang Seng Koh, Hsin Pan, Futong Cho, and Fuliang Cho. The Patent-in-Suit generally covers apparatus and methods for enabling secure contactless payment with a portable device, In one exemplary embodiment, a device may contactlessly emulate a payment card. For example, users may select one of a plurality of payment cards stored in a memory, and carry out a contactless transaction at a point of service ("POS"). In another embodiment, the device may securely conduct transactions over an open network with a payment server. By contactless payments, the inventions of the Patent-in-Suit provide significant time-savings, particularly in situations where a payment process would otherwise involve more than one contact between a merchant and consumer.

15. Shell has manufactured, used, marketed, distributed, sold, offered for sale, and exported from, and imported into the United States devices and software that infringe the Patent-in-Suit. Shell has distributed variants of the Shell App that have included functionality to make

contactless payments at Shell locations on any Android or iOS mobile device since at least 2018.[8] The current and previous versions of the Shell App, and the hardware and software supporting the Shell App (including Shell servers) are non-limiting instances of the Accused Products. The Accused Products practice the claims of the Patent-in-Suit to improve the shopping experience of their users, and to improve Shell's position in the market.

16. RFCyber has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patent-in-Suit. On information and belief, any prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## COUNT I
### (Infringement of the '855 Patent)

17. Paragraphs 1 through 16 are incorporated herein by reference as if fully set forth in their entireties.

18. RFCyber has not licensed or otherwise authorized Shell to make, use, offer for sale, sell, or import any products that embody the inventions of the '855 Patent.

19. Shell infringes, contributes to the infringement of, and/or induces infringement of the '855 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '855 Patent including, but not limited to, at least the Accused Products.

20. Shell has directly infringed and continues to directly infringe the '855 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '855 Patent. Upon information and

---

[8] https://apps.apple.com/us/app/shell-fuel-charge-more/id1410234033;
https://play.google.com/store/apps/details?id=com.shell.sitibv.motorist.america&hl=en_US

belief, these products include the Accused Products that practice the methods and systems covered by the '855 Patent including, for example, contactless payment functionality implemented by the Shell App. For example, the Shell App infringes at least Claim 9 of the '855 Patent.

21. For example, Shell has and continues to directly infringe at least claims of the '855 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method for funding an e-purse, the method comprising: receiving a request from a portable device; verifying the request with an account in a bank across a network; initiating a fund transfer request by a server with a financial institution administrating the e-purse when the request is successfully verified; sending commands to the portable device to cause an emulator in the portable device to update a transaction log in the portable device after an authenticity of the commands is verified by a midlet in the portable device, and wherein the request is a response composed by an e-purse applet after the e-purse applet receives an initial request from the midlet in the portable device and a PIN is entered by a user of the portable device and verified, the request is sent over a wireless network to the server, and wherein the e-purse in the portable device has been personalized by operations including: establishing an initial security channel between the card module and an e-purse security authentication module (SAM) external to the card module to install and personalize the e-purse applet in the card module, and creating a security channel on top of the initial security channel to protect subsequent operations of the card module with the e-purse SAM, wherein any subsequent operation of the emulator is conducted over the security channel via the e-purse applet.

22. The Accused Products practice a method comprising receiving a request from a portable device. For example, Shell servers receive a request from mobile devices running the

Shell App when performing a contactless or online purchase with a saved payment method, such as a Shell card or checking account.



https://www.youtube.com/watch?v=CseCtbLYxEE

23. The Accused Products further practice a method of verifying the request with an account in a bank across a network. For example, the servers supporting the Shell app verify with a bank account across a network that a user has a sufficient balance to fund a transaction with a saved payment method.



https://www.youtube.com/watch?v=Zb5I3cc7cHg



https://www.youtube.com/watch?v=nig96NZwiDA

24. The Accused Products further practice a method of initiating a fund transfer request by a server with a financial institution administrating the e-purse when the request is successfully

verified. For example, upon verifying a request for funds (*e.g.*, to complete a transaction with a saved payment card), the Shell App servers (administering the Shell App) initiate a fund transfer request for the requested funds with the institution administering the user's account.

25.     The Accused Products practice a method of sending commands to the portable device to cause an emulator in the portable device to update a transaction log in the portable device after an authenticity of the commands is verified by a midlet in the portable device. For example, upon information and belief, the servers supporting the Shell App send commands to a phone running the Shell Application to cause an emulator *(e.g.*, a portion of the Shell application and/or associated APIs including functionality for logging transactions, rendering cards, and rendering QR/bar codes) to update a transaction log (*e.g.*, transaction history) after the authenticity of commands is verified by a midlet (*e.g.*, the Shell application), such as via SSL/TLS certificate.



https://www.youtube.com/watch?v=nig96NZwiDA

26.     The Accused Products practice a method wherein the request is a response composed by an e-purse applet after the e-purse applet receives an initial request from the midlet

in the portable device and a PIN is entered by a user of the portable device and verified, the request is sent over a wireless network to the server. For example, the request to a server supporting the Shell application (*e.g.*, to load a card and/or complete a transaction) is a response composed by an e-purse applet (*e.g.*, the software representation of a Shell card and/or other saved payment methods) after the e-purse applet receives an initial request from the midlet (e.g., the Shell App) and a PIN (*e.g.*, a face ID, 4-digit PIN, password, fingerprint) entered by the user is verified.

27. The Accused Products practice a method wherein the e-purse in the portable device has been personalized by operations including: establishing an initial security channel between the card module and an e-purse security authentication module (SAM) external to the card module to install and personalize the e-purse applet in the card module. For example, upon information and belief, saving a card in the Shell App comprises establishing an initial security channel (*e.g.*, SSL/TLS connection) between the card module (, a secure memory area in which sensitive card information is saved) and an e-purse security authentication module external to the card module (*e.g.*, a server security module) to install and personalize the software representation of a user's saved card.

28. The Accused Products practice a method wherein the e-purse in the portable device has been personalized by operations including: creating a security channel on top of the initial security channel to protect subsequent operations of the card module with the e-purse SAM, wherein any subsequent operation of the emulator is conducted over the security channel via the e-purse applet. For example, upon information and belief, personalization further includes creating a security channel on top of the initial security channel, *e.g.*, via an additional layer of encryption, such as a user device fingerprint and/or key used to encrypt transmitted card data, to protect any subsequent operation of the card module with the security module of the Shell servers. For

12

example, upon information and belief, any subsequent operation of the emulator portion of the Shell App (*e.g.*, to conduct transactions with a given card applet) are protected by such fingerprints, keys, and/or certificates.

29.     Shell has indirectly infringed and continues to indirectly infringe one or more claims of the '855 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Shell's customers and end-users, in this District and elsewhere in the United States. For example, Shell's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through its use of the inventions claimed in the '855 Patent. Shell induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Shell's inducement, Shell's customers and end-users use Accused Products in a way Shell intends and directly infringe the '855 Patent. Shell performs these affirmative acts with knowledge of the '855 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '855 Patent.

30.     Shell has indirectly infringed and continues to indirectly infringe one or more claims of the '855 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Shell's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States, and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '855 Patent is directly infringed by others. The accused components within the Accused

Products are material to the invention of the '855 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Shell to be especially made or adapted for use in the infringement of the '855 Patent. Shell performs these affirmative acts with knowledge of the '855 Patent and with intent, or willful blindness, that it causes the direct infringement of the '855 Patent.

31. Because of Shell's direct and indirect infringement of the '855 Patent, RFCyber has suffered, and will continue to suffer, damages in an amount to be proved at trial.

32. Because of Shell's direct and indirect infringement of the '855 Patent, RFCyber has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law, unless Shell's infringement is enjoined by this Court.

**DEMAND FOR JURY TRIAL**

33. Plaintiff hereby demands a jury for all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

a. Entry of judgment declaring that Defendants infringe one or more claims of the Patent-in-Suit;

b. Entry of judgment declaring that Defendants' infringement of the Patent-in-Suit is willful;

c. An order awarding damages sufficient to compensate Plaintiff for Defendants' infringement of the Patent-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d. Enhanced damages pursuant to 35 U.S.C. § 284;

  e. Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285;

  f. An accounting for acts of infringement;

  g. Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

  h. Such other and further relief as the Court deems just and proper.

Dated: July 18, 2024       Respectfully submitted,

               /s/*Alfred R. Fabricant*
               Alfred R. Fabricant
               NY Bar No. 2219392
               Email: ffabricant@fabricantllp.com
               Peter Lambrianakos
               NY Bar No. 2894392
               Email: plambrianakos@fabricantllp.com
               Vincent J. Rubino, III
               NY Bar No. 4557435
               Email: vrubino@fabricantllp.com
               Richard M. Cowell
               NY Bar No. 4617759
               Email: rcowell@fabricantllp.com
               Jacob Ostling
               NY Bar No. 5684824
               Email: jostling@fabricantllp.com
               **FABRICANT LLP**
               411 Theodore Fremd Avenue
               Suite 206 South
               Rye, New York 10580
               Telephone: (212) 257-5797
               Facsimile: (212) 257-5796

               ***ATTORNEYS FOR PLAINTIFF***
               ***RFCYBER CORP.***